Good morning, your honors, and may it please the court. My name is Josh Pekar. I'm a law student appearing pursuant to a 7-11 license on behalf of the appellant, Vincent Jones. In this case, the officers easily could have sought a warrant to search Mr. Jones's residence and safes, but they did not. This court should reverse the decision below because the officer's opening of Jones's safes violated the Fourth Amendment, and if this court is not persuaded by that rationale, it should still reverse the decision below because the officer's failure to heed Jones's Randolph. Turning to the first argument, the Plain View Doctrine does not apply because Officer Piergalski admitted that the safes were closed, and therefore he could not see them in plain view. In his initial police report, Officer Piergalski wrote that he, quote, that there was a key in the top smaller safe, and the safe was unlocked, so I pulled it open for officer safety, and then Officer Piergalski admitted that the police report was correct, and that he could not see the guns until the safe was open. Therefore, it was clear error for the district court to find that the safes were open, and that they were in plain, that the guns were in plain view. Because the guns were not in plain view, the only question is whether Ms. Kelly had the authority to consent to the search of the safes, both the actual and apparent authority, and she had neither. The government does not dispute the fact that Ms. Kelly had neither the actual or apparent authority to consent to the search of the safes. Ms. Kelly herself never entered the safes, she never used the guns in the safes, she did not have the keys to the safes, and she testified that the safes were Jones's. For this reason, she did not have the actual authority to consent to the search of the safes. She also lacked the apparent authority. All of the facts I just mentioned were told to the police while she was at the police station, and additionally, Officer Piergalski testified that he believed the safes were Jones's. Finally, when the officers did arrive into Jones's residence, they would have seen that the safes were closed. This was further rationale to understand that Ms. Kelly did not have the actual, the apparent authority to consent to the search of the safes, because the officers should have seen that the guns were not in plain view, and that Ms. Kelly, having already testified that she did not have the ability to enter into the safes, did not have the apparent authority to do so. Nevertheless, Your Honor, the safe was closed, and the distinction in the actual and apparent authority cases is not about whether it was locked, but whether it was closed and in plain view. But she did testify that he kept guns. That is true, Your Honor, but nonetheless, she never entered into the safes, did not have the keys to the safes, and the officers were aware of all of these facts, and Ms. Kelly also said that she, quote, never got involved with the gun safes, and therefore, she lacked both the actual and apparent authority. And for this reason, the court should reverse the decision below. But if the court is not convinced by the plain view rationale, it should still reverse, because the officers' failure to heed Jones's objections violated Georgia against Randolph. When the police entered into Mr. Jones's residence, he told them, first, I didn't invite you in, and second, in response to Officer Chavez's rummaging around through several boxes, he stated, don't you need a warrant? Either of these are sufficient to amount to an objection. It was clear error for the district court not to credit either of these uncontroverted statements from Mr. Jones. This, coupled with the fact that the officer's own testimony as to the order of events was completely jumbled, and none of the officers could consistently remember who arrived first, who handcuffed Mr. Jones, in what order they arrived at the house, or whether anything was said to Mr. Jones within the house, is further evidence that it was clear error for the district court not to credit Mr. Jones's testimony. Well, it just comes down to whether you believe Jones or the police officers, right? It is a question of clear error for this court to decide whether or not Mr. Jones was credible. But given that Mr. Jones was consistent in his testimony, it was uncontroverted, and additionally, the government had the opportunity to put new witnesses on the stand after Jones testified during the second suppression hearing, and they never did. But they absolutely could have, because after Jones testified, the government still called two witnesses to the stand to testify as to further events that happened on the day of the search. Therefore, because the testimony was uncontroverted, the government's own testimony from the officers was completely confused as to the order of events, and the was clear error for the district court not to credit Jones's testimony. The question, therefore, is whether under Georgia against Randolph, the statements amounted to objections which could overcome Kelly's consent to the search, and either of the two statements are sufficient objections. In Georgia against Randolph, the Supreme Court said that to determine whether a statement amounts to an objection, one must look to social custom. In this case, even if Ms. Kelly were in the residence and explicitly said to the officers, I consent to your search, the officers standing at the doorway hearing Mr. Jones say, I didn't invite you in, is certainly sufficient as an evidence of social custom that he did not want them to enter their house, and that he was objecting to the search of the safes and of the residence. But so too is Mr. Jones's response to Officer Chavez's rummaging around through boxes, don't you need a warrant? In United States against Henderson, this court found that the statement, get the fuck out of here, amounted to an objection because the officers should easily have understood that the defendant did not want them in their house. Similarly here, don't you want a warrant? Taken in the context of the fact that Officer Chavez was rummaging around through boxes in Mr. Jones's house when he did not want them in there should have signified to Officer Chavez that Mr. Jones was objecting to the search. He understood that there was a warrant requirement under the Fourth Amendment, and he did not want Officer Chavez to simply go around and look through all of the things in his residence without completely complying with the warrant requirement. Mr. Picard, is it clear that whose residence this was? Clear to whom, Your Honor? Well, is it the defendant's residence? Yes, it was the defendant's residence that he shared. Because he stays there at times, is that it? He had stayed there for a number of years, and he lived there with Ms. Kelly. It's true his name was on the lease, but nonetheless he lived at the residence for a number of years, and it was his home. He used the gym in the trailer park, and it was as much his residence as it was Ms. Kelly's. But therefore, the statements amount to objections, and the court should find that the objections overcame Ms. Kelly's consent to the search. But even if the statements do not amount to objections, the court should still reverse because the officers violated Fernandez against California by removing Jones from the scene for the purposes of preventing him from objecting. How far away was he? He was on the adjoining property approximately 20 feet away from his residence at a picnic table. But, Your Honor, in the case of Georgia against Randolph, where one needs to be present to object, the fact that Mr. Jones was taking off his own property is highly relevant. In United States against Witslip, this court said that just the fact of being in your driveway was far enough to prevent one from objecting because they were not present. Surely being taken off your own property is sufficient to make it so that Mr. Jones was not present for the purposes of Georgia against Randolph, and therefore he could not object to the search. So we're pretty certain that he's on the cartilage of that property? Or not? What does the record reflect, Mr. Picard, on where he was? He was 20 feet away from his residence in between, it seems like, his trailer and the adjoining trailer at a picnic table. But he testified that he was not at his residence, and I believe the officers had testified similarly as well. Well, but not at his residence, but that, as Judge Flanagan said, the cartilage includes the land around the trailer. Even if it does include the land around the trailer, Your Honor, the fact that being in your own driveway is not sufficient to be present certainly indicates that being at a picnic table where you're out of your shot and you also can't see what's happening in the search is sufficient not to be present. We simply shouldn't have a situation... He's, they know he's been convicted of weapons violations, guns. He may be violent, but they put him at a, instead of standing outside, they put him in a picnic table 20 feet from the house. Your Honor, it wasn't objectively reasonable for the officers to remove Mr. Jones from his residence when he was being completely compliant with their requests to put him at a picnic table to guard him by... And he agreed to let him search, right? No, he did not agree to let them search. He objected to their search. But even more problematic is the fact that the officers simply point to officer safety as a rationale to conduct a warrantless search. Officer Piergalski testified that he opened the safes for officer safety because he was afraid they were booby trapped. If the court is going to allow officers simply to wave the flag of officer safety and allow them to conduct a warrantless search, then the bounds of the police's ability to circumvent the warrant... So when the police officer testified, it's not to be believed because he's just waving the flag, and if the defendant testifies, we're to believe him? No, Your Honor, the district court can make reasonable credibility determinations. The problem is that it simply doesn't make any sense to open a safe for officer safety if you're afraid of it being booby trapped. Your Honor, for these reasons, it was objectively unreasonable for the officers to remove Mr. Jones from his residence, and I would like to reserve the rest of my time for rebuttal. Thank you. Mr. Whalen. Good morning, Your Honor. May it please the court. My name is Nathaniel Whalen, and I'm here on behalf of the United States. Judge Kaney, I think you hit the nail on the head with your last line of questioning, which is the problem Mr. Jones faces on appeal is he presents the facts as he wants them, not as the district court found them, and he's asking this court to find the district court's to say basically you shouldn't raise an appeal if your only issue is challenging clear error. He asked this court to do it in multiple instances, and so I think it's important to remember what the district court actually found in this case. What it found is a 14-year-old calls up the cops and says, my mother's live-in boyfriend has been molesting me for years. The cops arrive. They say, do you want to talk? The 14-year-old and mother say, no, we don't feel comfortable talking here. They go back to the station. At that point, the daughter tells everything that happened. The officers say, all right, we're going to take you back to the house. The mother says, no, I'm scared. Mr. Jones is violent. He's aggressive. He's a felon. He has firearms in the house. Officers confirm he's a felon. They call a couple other three other officers to come help them secure Mr. Jones, take him out of the house. They go to the house. They walk up, knock on the door, say, Mr. Jones, do you have any weapons in the house? He says, no, other than those knives, points to the knives behind him. They say, all right, we need you to come out. He voluntarily comes out of the house. They handcuff him for officer safety, take him 15 to 20 feet away. The mother then consents to the search. They go inside, and they see that the safe is open. Officer Piergalski and Jackson both testify the safe's open. Piergalski looks inside. He sees at firearm, and then opens it further. That's what the district court found in this case. That's the hurdle Mr. Jones is up against to try to argue that those facts are clear error. We don't believe he's met that hurdle. Just briefly in terms of whether he objected, he continues to say that it's uncontroverted testimony that he objected. That's just not right. Deputy Galski said at no time did Jones ask about searching the trailer or what's going on and said you can't go in the Jones say you can't search this place. I live here. You can't go in or anything like that. Jackson says Jones never made any comments about the search of the trailer or whether anybody could search the trailer or not, and Deputy Chavez testified similarly. It's on page five of our response brief. His position, Mr. Jones argues, yeah, but they don't talk about whether that's inside or outside, and Jones claims he objected inside. District Court found his testimony incredible. He was a liar. He had a motive to lie. District Court said he didn't believe that Mr. Jones objected, but the officer's testimony covers both inside and outside. They said at no time did he object. So really what we're dealing with here is clear error, Your Honors. We don't think he's met that burden. Unless this court has any further questions, we would rest on our briefs and also rest on the inevitable discovery doctrine as outlined in our briefs. Thank you, Mr. Whalen. Thank you, Your Honors. Two brief points on rebuttal, Your Honor. The first is that the government's reliance on officer safety truly does not make sense when, as opposing counsel just argued, the officers knew that Mr. Jones had knives. Nevertheless, they allowed him to go back into the house to then they would have had to follow him into the house or collect the keys and wallet on his behalf. And this is further buttressed by the fact that Officer Piergalski himself testified against interest on cross-examination at trial that the safes were actually closed, and he confirmed that his police report that was filed contemporaneously with the original search was correct, that he opened the safes because he was afraid that there would be booby traps. The officer's safety rationale is simply insufficient. Second, as to the question of whether Jones's objections were uncontroverted, the government plays fast and loose with the timing of when Mr. Jones made his statements and which officers were present during the moment when he made those statements. Officers Piergalski and Jackson were not present in the residence when he made those statements, and therefore, their testimony is irrelevant as to whether or not he objected. Officer Gunning testified only as to what happened when Mr. Jones was outside, and therefore, similarly, had no testimony about whether or not Jones objected. Piergalski responded to the question of whether he had any conversation once they were at the picnic table, similar to Officer Gunning. The only officer to testify about what happened while they were inside of the house was Officer Gunning, or excuse me, Officer Chavez, who stated that at no time did Jones object. But Officer Chavez simply could have been responding to the question of whether Jones said the phrase, I object. And as discussed earlier, Mr. Jones made two statements that amount to objections, but did not employ the terms, I object. And therefore, this court should reverse the decision below. Thank you. Thank you, Mr. McCarr. Thank you, Mr. Allen. Mr. McCarr, is this your initial appearance in the Seventh Circuit? Yes. Well, we look forward to seeing you again. And to Mr. Strauss and Ms. Gonski, we appreciate your accepting the appointment in this case and representing the defendant. The case is taken under advisement. The court will stand at recess.